# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN LEE WILES,<br>　　　　　　　Plaintiff, | )<br>)<br>) | |
| 　　　v. | )<br>)<br>) | 1:21CV84 |
| | ) | |
| BLACK & BOONE, P.A. (f/k/a BLACK<br>AND GROSSMAN, P.A.) and STEVEN<br>A. GROSSMAN, jointly and individually, | )<br>)<br>)<br>) | |
| | ) | |
| 　　　　　　　Defendants. | )<br>) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff John Lee Wiles' Amended Motion for Summary Judgment, or *in the alternative*, Partial Summary Judgment (Docket Entry 64), and Defendants Black & Boone, P.A. and Steven A. Grossman's Motion for Summary Judgment (Docket Entry 60.) Also before the Court is Plaintiff's Verified Motion to Extend Time to File Plaintiff's Amended Motion for Summary Judgment, Brief in Support of Amended Motion for Summary Judgment, and Response in Opposition to Defendants' Motion for Summary Judgment. (Docket Entry 70.) All matters have been fully briefed and are ripe for disposition. For the reasons stated herein, the Court will deny Plaintiff's Amended Motion

for Summary Judgment, and grant in part and deny in part Defendants' Motion for Summary Judgment. Further, Plaintiff's Motion to Extend Time will be granted.[1]

## I. PROCEDURAL BACKGROUND

Plaintiff initiated this action in the United States Bankruptcy Court for the Eastern District of North Carolina on September 22, 2020. (*See* Complaint ("Compl."), Docket Entry 1.) On January 28, 2021, the parties agreed to transfer the case to the Middle District of North Carolina. (Docket Entry 18 at 2-5.) On April 1, 2021, Defendants filed a motion for judgment on the pleadings. (Docket Entry 22.) Thereafter, on April 13, 2021, Plaintiff filed a motion to amend the Complaint (Docket Entry 24), which was granted in part and denied in part, and as such Defendants' motion for judgment on the pleadings was denied as moot (Docket Entry 47). Plaintiff is a former client of Defendant Steven A. Grossman ("Grossman"), who previously engaged in the practice of law as a licensed attorney at Defendant Black & Boone, P.A. ("Defendant Law Firm"), and Plaintiff brings claims of legal malpractice against Defendants, fraud as to Defendant Grossman, and respondeat superior as to Defendant Law Firm. (*See* Am. Compl.; Docket Entry 48.) For relief, Plaintiff seeks, *inter alia*, damages in excess of $75,000, and punitive damages in excess of $75,000 from Defendant Grossman. (*Id.* at 12.)[2] Defendants then filed an answer. (Docket Entry 52.)

After the close of discovery, Defendants filed a motion for summary judgment and supporting brief regarding all of Plaintiff's claims on August 1, 2022. (Docket Entries 60, 61.)

---

[1] By consent of the parties, this matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(c), to conduct all proceedings including a jury or nonjury trial, to order the entry of judgment, and to conduct all post-judgment proceedings therein. (*See* Docket Entry 37.)

[2] All citations in this Order to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear in CM/ECF.

Plaintiff filed a response in opposition to Defendants' motion. (Docket Entry 66.) Plaintiff also filed an amended motion for summary judgment, or *in the alternative*, partial summary judgment and supporting brief on August 12, 2022. (Docket Entries 64, 65.) Defendants filed a response in opposition. (Docket Entry 68.) Then on September 26, 2022, Plaintiff filed a Verified Motion to Extend Time to File Plaintiff's Amended Motion for Summary Judgment, Brief in Support of Amended Motion for Summary Judgment, and Response in Opposition to Defendants' Motion for Summary Judgment (Docket Entry 70), which Defendants oppose (Docket Entries 68, 69, 72).

## II. FACTUAL BACKGROUND

On September 19, 2009, Plaintiff was involved in a physical altercation with a man named Tony Ray Simmons, Jr., wherein Plaintiff shot Simmons with a pistol. (Am. Compl. ¶ 24; Answer ¶¶ 131, 134.) Following this altercation, on September 17, 2012, Simmons hired Lucas Baker ("Simmons's Counsel") and filed a complaint against Plaintiff for Common Law Battery. (Am. Compl. ¶¶ 22, 26-27.) Plaintiff subsequently hired Defendants to represent him in defending against Simmons's complaint and asserted an affirmative defense of self-defense and defense of another in response. (Am. Compl. ¶¶ 28-29; Answer ¶¶ 28-29, 135.)

On November 26, 2014, Simmons's Counsel, under N.C. Gen. Stat. § 1A-1, Rule 41, filed a Notice of Voluntary Dismissal without prejudice, and subsequently refiled the complaint in 2015 against Plaintiff regarding the same September 2009 incident. (Am. Compl. ¶¶ 30-31; Docket Entry 51-1 at 2-3; Docket Entry 51-2 at 2-5; Answer ¶¶ 136-37.) The 2015 complaint was set for trial on January 17, 2017, after several continuances. (Am. Compl. ¶¶ 33-34.) On January 10, 2017, Simmons's Counsel emailed Defendant Grossman that he would

3

be sending jury instructions for the "punitive phase charge . . . separately." (Am. Compl. ¶ 58;
Docket Entry 51-5 at 2.)  Defendant Grossman replied to Simmons's Counsel's email that he
thought Simmons had agreed to dismiss the punitive damages claim to which Simmons's
Counsel answered that this was never agreed to as he only said he would think about it. (Am.
Compl. ¶¶ 59-60; Docket Entry 51-6 at 2; Docket Entry 51-7 at 2.)  Simmons's Counsel then
sent Defendant Grossman the jury instructions for the punitive damages claim. (Am. Compl.
¶ 61; Docket Entry 51-8 at 2-10.)

On January 17, 2017, between 10:13 a.m. and 10:15 a.m., Defendant Grossman and
Simmons's Counsel had a short discussion with the presiding Superior Court Judge, where
they told the Judge that they had a few matters to discuss at the pretrial conference at 11:00
a.m. (Am. Compl. ¶¶ 35-37; Docket Entry 51-3 at 5-6.)  Subsequently that day, at 12:05 p.m.,
Simmons's Counsel and Defendant Grossman filed a Consent Order of Dismissal without
prejudice, as such the 2015 case was dismissed, and Simmons was granted leave to re-file a
complaint against Plaintiff within ninety days. (Am. Compl. ¶¶ 36-39; Docket Entry 51-4 at
1-2; Answer ¶ 144.)

On April 13, 2017, Simmons filed his third complaint against Plaintiff regarding the
September 2009 altercation but this complaint contained a different set of facts about the
events leading up to the shooting than the previous two complaints. (Am. Compl. ¶¶ 67, 69;
Docket Entry 51-10 at 2-5.)  Simmons's Counsel contended that the fact patterns drafted in
the 2012 and 2015 complaints were erroneous and that Simmons had not reviewed them prior
to filing. (Am. Compl. ¶ 74.)  Defendant Grossman agreed not to cross examine Simmons
regarding the factual differences between the previous complaints and the 2017 complaint as

4

doing so would require Simmons's Counsel to withdraw in order to testify that Simmons never read the prior complaints. (Am. Compl. ¶¶ 75, 77; Docket Entry 51-11 at 2-5.) Trial for the 2017 complaint was set for December 17, 2018. (Answer ¶ 146.)

Leading up to the December 2018 trial, Defendant Grossman was running for judicial office in Cabarrus County and was elected as District Court Judge in November 2018. (Am. Compl. ¶¶ 94, 96.) During the December 2018 trial, Defendant Grossman did not bifurcate the trial between the liability and damages phases. (*Id.* ¶ 98.) On December 18, 2018, the jury awarded Simmons $1,000,000 in compensatory damages and $2,000,000 in punitive damages. (*Id.* ¶ 90.) After trial, the verdict and judgment were affirmed by the North Carolina Court of Appeals. (Answer ¶ 149.)

## III. DISCUSSION

### A. Plaintiff's Motion to Extend Time

Plaintiff has filed a Verified Motion to Extend Time to File Plaintiff's Amended Motion for Summary Judgment, Brief in Support of Amended Motion for Summary Judgment, and Response in Opposition to Defendants' Motion for Summary Judgment requesting the Court to extend the time to allow Plaintiff's filings to be considered timely on the basis of excusable neglect. (Docket Entry 70.) Defendants oppose the Motion. (Docket Entries 68, 69, 72.)

By way of background, on August 4, 2022, the Court entered a Text Order granting Plaintiff until August 11, 2022, to file a summary judgment motion. (Text Order dated 8/4/2022.) Plaintiff did not file his amended summary judgment motion and supporting brief until August 12, 2022, at 1:55 a.m. and 2:01 a.m. respectively. (Docket Entries 64, 65.) However, Plaintiff's counsel explains that the amended summary judgment motion and

supporting brief were filed in the early morning hours of August 12, 2022, due to exhibits missing from the initial summary judgment motion as they were accidentally deleted, being down one attorney and one paralegal since June 13, 2022, and having a busy schedule that week. (Docket Entry 70 at 2-3.)

Additionally, on August 1, 2022, Defendants filed their summary judgment motion and supporting brief. (Docket Entries 60, 61.) Plaintiff's response in opposition to Defendants' summary judgment motion was due August 31, 2022. Plaintiff's counsel did not file the response until September 1, 2022, at 12:46 a.m. (Docket Entry 66.) Plaintiff's counsel explains that this forty-six minute delay was also due to the staffing shortage and having many obligations. (Docket Entry 70 at 4.) Defendants oppose Plaintiff's Motion contending, *inter alia*, that holding Plaintiff accountable to the Court's orders is particularly warranted in light of his repeated violations. (Docket Entries 68 at 4-6, 69 at 2 n.1.)

Local Rule 7.3(k) provides that the "failure to file a brief or response within the time specified in this rule shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect." *See also* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Here, Plaintiff did not request an extension of time until 45 days after his late amended motion for summary judgment was filed and 25 days after his late response in opposition to Defendants' summary judgment motion. (Docket Entries 64, 65, 66, 70.) Thus, under Federal Rule of Civil Procedure 6(b) and Local Rule 7.3(k), Plaintiff has waived

his right to move for summary judgment and to respond to Defendants' summary judgment motion unless he can establish "excusable neglect."

"[T]he Supreme Court held that the determination of excusable neglect is an equitable one, based on consideration of 'the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Daye v. Potter*, 380 F.Supp.2d 718, 720-21 (M.D.N.C. 2005) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Here, the Court concludes that Plaintiff has established excusable neglect for the untimely filing of his amended motion for summary judgment, supporting brief, and response in opposition to Defendants' summary judgment motion. Specifically, any prejudice to Defendants is minimal, as the only potential prejudice to Defendants by the Court granting Plaintiff's Motion to Extend is that Plaintiff's motion for summary judgment will be considered and Defendants' motion for summary judgment will be opposed, which is not "unfair prejudice." *See Garcia v. Navasota Indep. Sch. Dist.*, No. H–09–3892, 2010 WL 5139438 at *1 (S.D. Tex. Dec. 2, 2010) (unpublished) (noting that "[t]he fact that a substantive summary judgment motion is opposed is not unfair prejudice to Defendants"). Moreover, to allow Defendants' motion for summary judgment to go uncontested would prevent a fair and complete opportunity for the claims and defenses of the parties to be fully adjudicated. *See Savage v. City of Twin Falls*, No. 1:13-cv-00179, 2015 WL 12681319, at *12 (D. Idaho Jan. 20, 2015) (unpublished) (recognizing that "among the purposes of Rule[] 6 . . . is the goal of a fair

7

and complete opportunity for the claims and defenses of the parties to be fully adjudicated, even while imposing order upon the progress of a particular lawsuit").

Furthermore, as to the other excusable neglect factors, Plaintiff's filings were only minutes to hours late, such that it had no substantive impact on judicial proceedings, and Plaintiff acted in good faith by trying to timely file the documents during the early hours of the morning. *See Revak v. Miller*, No.7:18-CV-206-FL, 2021 WL 2188674 at *2-3 (E.D.N.C. May 28, 2021) (unpublished) (concluding that weighing the foregoing considerations, defendants demonstrated excusable neglect, as any prejudice to plaintiff was minimal, since the delay lasted only four hours and occurred during the early hours of the morning outside of regular business hours, and counsel demonstrated good faith by continuing his attempts to file the documents into the early hours of the morning).

Therefore, for good cause shown, Plaintiff's Motion to Extend is granted, and Plaintiff's amended motion for summary judgment, supporting brief, and response in opposition to Defendants' motion for summary judgment will be considered.

## B. Summary Judgment Standard

Both parties have moved for summary judgment in this matter. (Docket Entries 60, 64.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the

non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson,* 477 U.S. at 248-49. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

C. **Defendants' Motion for Summary Judgment**

Defendants contend that they are entitled to summary judgment on Plaintiff's claims for legal malpractice, fraud, and respondeat superior. (Docket Entries 60, 61.) Specifically, Defendants contend that: (1) Plaintiff is precluded from relitigating two issues previously decided by North Carolina state courts; (2) judgmental immunity bars Plaintiff's remaining theories for liability; (3) Plaintiff's claims also fail because he has no evidence to support proximate cause; and (4) Plaintiff cannot recover punitive damages either as an element of compensatory damages or independently. (*Id.*)

i. **Collateral Estoppel or Issue Preclusion**

"A federal court sitting in diversity jurisdiction must apply the res judicata or collateral estoppel law of the state from which the original judgment issued." *Sanders v. Novant Health, Inc.*, No. 0:20-01287, 2021 WL 1140222, at *2 (D.S.C. Mar. 25, 2021) (unpublished); *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995) ("In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel."). Here, as this is a diversity jurisdiction case, where the original judgments were issued by North Carolina state courts, North Carolina's collateral estoppel law applies. In North Carolina, collateral estoppel or issue preclusion requires:

> (1) a prior suit resulting in a final judgment on the merits; (2) identical issues involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined.

*McDonald v. Skeen*, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211 (2002). For issues to be considered "identical" to ones actually "litigated and necessary" to a previous judgment North Carolina courts have set forth the following analysis:

(1) the issues [are] the same as those involved in the prior action, (2) the issues . . . have been raised and actually litigated in the prior action, (3) the issues [were] material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action [was] necessary and essential to the resulting judgment.

*Sykes v. Blue Cross & Blue Shield of N.C.*, 372 N.C. 318, 325, 828 S.E.2d 489, 494 (2019) (citations omitted); *see also McElhaney v. Orsbon & Fenninger, LLP*, 278 N.C. App. 214, 223-24, 862 S.E.2d 391, 399 (2021). As such, the doctrine of collateral estoppel or issue preclusion precludes relitigation of a fact, question or right in issue. *State v. Summers*, 351 N.C. 620, 622, 528 S.E.2d 17, 20 (2000). Further, "collateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). Moreover, North Carolina permits defendants to assert collateral estoppel as a defense against a party who has previously had a full and fair opportunity to litigate a matter and now seeks to reopen identical issues with a new adversary. *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 434-35, 349 S.E.2d 552, 560 (1986); *see also Sartin v. Macik*, 535 F.3d 284, 288 (4th Cir. 2008) (stating that North Carolina courts have abandoned the requirement of "mutuality of estoppel" for the defensive use of collateral estoppel).

Also, "[a]n issue is actually litigated, for purposes of collateral estoppel or issue preclusion, if it is properly raised in the pleadings or otherwise submitted for determination and [is] in fact determined." *Williams v. Peabody*, 217 N.C. App. 1, 6, 719 S.E.2d 88, 93 (2011) (citation omitted). "A very close examination of matters actually litigated must be made in order to determine if the underlying issues are in fact identical[;] [i]f they are not identical, then the doctrine of collateral estoppel does not apply." *Id.* (citation omitted). "The burden is on

11

the party asserting issue preclusion to show 'with clarity and certainty what was determined by the prior judgment.'" *Miller Bldg. Corp v. NBBJ N.C., Inc.*, 129 N.C. App. 97, 100, 497 S.E.2d 433, 435 (1998).

Here, the evidence shows that on January 11, 2021, Plaintiff moved pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b)(4) and (6) for the North Carolina trial court to enter an order relieving him of the final judgment entered against him by the December 2018 verdict. (*See* Docket Entry 60-4.) In support of his motion, Plaintiff contended that without his knowledge or consent Defendant Grossman entered into an agreement on January 17, 2017, with Simmons's Counsel to dismiss Simmons's second complaint without prejudice ("2017 Consent Order"). (*Id.*) Plaintiff also asserted that prior to the 2018 trial, without his knowledge or consent, Defendant Grossman entered into a pretrial agreement with Simmons's counsel stipulating that the pleadings in the 2012 and 2015 cases would be "inadmissible for any purpose and shall not be read to the jury." (*Id.*) Plaintiff also included an affidavit reiterating his arguments that Defendant Grossman did not "secure" his authorization or informed consent to enter into the 2017 Consent Order, and that without his consent Defendant Grossman entered into a pretrial agreement in which the prior two pleadings would be inadmissible. (*See* Docket Entry 60-5.)

On February 25, 2021, the North Carolina trial court denied Plaintiff's motion. (*See* Docket Entry 60-6.) Specifically, the Court found as "findings of fact" that Plaintiff's arguments in his motion essentially were that Defendant Grossman had not obtained Plaintiff's informed consent to enter into the 2017 Consent Order and that Defendant Grossman had not obtained Plaintiff's informed consent to enter into the 2018 pretrial

stipulations. (*Id.* at 5.) The trial court also found that Defendant "Grossman, aggressively litigated on [Plaintiff's] behalf." (*Id.*) Further, the trial court found that:

> The parties' stipulations set forth in the "Consent Order on Final Pre-Trial Conference" filed 17 December 2018 reflect that counsel of record considered many matters and were able to find mutual ground to ensure that the attorneys could try the case effectively on the merits in the least amount of time possible and with due regard to the convenience of witnesses. There is nothing so irregular about the parties' stipulations appearing on the face of the document which would amount to a procedural blunder. To the contrary, the face of the document reflects the standard of professionalism to which attorneys should adhere in expediting trials to the greatest extent possible.

(*Id.*) The trial court then concluded that Plaintiff "ha[d] failed to meet his burden to rebut the presumption that . . . Grossman had the authority to consent" to the 2017 Consent Order on Plaintiff's behalf. (*Id.* at 7.) Additionally, the trial court stated that "[e]ven if the court were to be persuaded (which it is not) that there was a lack of consent of [Plaintiff] to entry of the [2017 Consent Order] . . ., the remedy would be to set aside the consent order as a whole, the result of which would be to revive the [2015] action. Doing so would raise an odd situation . . . ." (*Id.* at 8.) Moreover, the trial court concluded that "given a thorough review of all the information before the Court, taken together with arguments from Counsel and extensive case law presented by the same, the Court finds that the Defendant in this case is unable to satisfy any of the three requirements for relief under Rule 60(b)(6)." (*Id.* at 9.)

Plaintiff then appealed the trial court's decision, which was affirmed by the North Carolina Court of Appeals. *See Simmons v. Wiles*, 2022-NCCOA-364, 872 S.E.2d 183 (N.C. App. May 17, 2022). Specifically, the North Carolina Court of Appeals presumed that an attorney is authorized to act for his client when entering into a consent order on the client's behalf and that one challenging the attorney's actions as being unauthorized has the burden

13

of rebutting the presumption, and Plaintiff failed to rebut that presumption. *Id.* at ¶ 19. The North Carolina Court of Appeals further stated that the trial court had considered evidence, including Plaintiff's affidavit, and concluded that it did not demonstrate Defendant Grossman lacked authority to enter into the 2017 Consent Order on Plaintiff's behalf, and as such could not hold the "trial court's determination was a result of an unreasoned decision." *Id.* at ¶¶ 20, 21. The North Carolina Court of Appeals also agreed that Plaintiff did not satisfy the three-part test to justify relief under Rule 60(b)(6) and noted that the trial court's finding regarding the 2018 pretrial stipulations reflected that counsel of record had considered many matters and that there was nothing so irregular about the parties' stipulations. *Id.* at ¶¶ 27, 29. Additionally, the North Carolina Court of Appeals concluded that it could not "disturb" the trial court's findings "[b]ecause competent evidence in the record support[ed] the trial court's findings that [Defendant Grossman] committed no procedural blunder and instead conformed to professional standards of practice, and that [Plaintiff's] liability was proven by 'strong, clear and convincing evidence.'" *Id.* at ¶ 29.

Having considered the evidence presented, the Court concludes that there is no genuine issue of material fact as to whether Plaintiff is precluded from relitigating that Defendant Grossman improperly entered into the 2017 Consent Order and improperly stipulated to not using the prior complaints without Plaintiff's consent. Specifically, in this action, Plaintiff alleges that Defendant Grossman failed to obtain his consent to enter into the 2017 Consent Order, and that without his consent, Defendant Grossman agreed not to cross-examine Simmons regarding the factual differences in Simmons's three complaints. (Am. Compl. at 4-8.)

14

However, as discussed above North Carolina courts have already issued final judgments on the merits of his Rule 60 motion and determined that Plaintiff failed to rebut the presumption that Defendant Grossman had the authority to enter the 2017 Consent Order, and that the 2018 pretrial stipulations pertaining to the inadmissibility of the 2012 and 2015 pleadings were not "irregular" and reflect the standard of professionalism to which attorneys should adhere to in expediting trials to the greatest extent possible. Furthermore, the determination of those two issues was relevant, necessary, and essential to the denial of his Rule 60 motion, because North Carolina courts concluded that the 2017 Consent Order was valid and did not bar the third action that went to trial in 2018. *See Simmons*, 2022-NCCOA-364, 872 S.E.2d at 183. Also, competent evidence supported the finding that Plaintiff's counsel committed no procedural blunder regarding the stipulation in connection with the prior two complaints, such that there was no justification to set aside the 2018 judgment. *See id.* at ¶¶ 27, 29. Even though Plaintiff in this action alleges claims for legal malpractice and fraud, the Court concludes that the issues pertaining to Defendant Grossman improperly entering into the 2017 Consent Order and improperly stipulating to not using the prior complaints without Plaintiff's consent are collaterally estopped from being asserted in this action, as Plaintiff seeks to relitigate the same issues Plaintiff raised in his North Carolina Rule 60 motion that North Carolina courts have already made a determination. *See Harmon v. Hunt*, No. COA11-1395, 2012 WL 2308313, at *2-3 (N.C. App. June 19, 2012) (unpublished) (affirming the trial court's dismissal of the action because an indispensable issue of plaintiff's legal negligence complaint was raised and resolved in prior decision; specifically, in the prior action, the court affirmed the validity of the settlement and concluded that defendants acted

with plaintiff's authority when they negotiated the settlement, and plaintiff's allegations in the instant case sought to relitigate the issue of whether defendants acted without her authority in reaching the settlement).[3]

### ii. <u>Legal Malpractice</u>

First, since the Court has already determined that the issues pertaining to Defendant Grossman improperly entering into the 2017 Consent Order and improperly stipulating to not using the prior complaints are collaterally estopped from being asserted in this action, the Court will not address those issues further. However, Defendants argue that Plaintiff's additional basis for Defendants committing legal malpractice, i.e., failing to adequately prepare for and bifurcate the punitive damages phase of trial and not conducting more discovery, are matters that amount to tactical decisions which "fall squarely within the judgmental-immunity doctrine." (Docket Entry 61 at 15.) Plaintiff argues that the evidence of "when, how, and why" Defendant Grossman made those decisions reveals that judgmental immunity does not apply, and that Defendant Grossman failing to obtain Plaintiff's informed consent to not bifurcate the trial, and failing to perform additional "substantive" discovery in the 2017 case, i.e., not inspecting the truck or trailer to investigate Simmons's assertions of a broken chain,

---

[3]The Court notes that the preclusive judgments issued by North Carolina courts were decided during the pendency of the instant action. (Docket Entry 60-6; *Simmons*, 2022-NCCOA-364, 872 S.E.2d at 183. However, neither party argues that this impacts the preclusive effect of the North Carolina judgments (*see* Docket Entries 61, 66, 67, 69), and the Court does not conclude otherwise, *see MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("issue preclusion applies even though the precluding judgment . . . comes into existence while the case as to which preclusion is sought . . . is on appeal.") (citations omitted); *NetSoc, LLC v. Chegg Inc.*, No. 18CV10262, No. 18CV12215, No. 18CV12267, 2020 WL 174305, at *1 (S.D.N.Y. Jan. 13, 2020) (unpublished) ("[T]he Federal Circuit has 'established that issue preclusion applies even though the precluding judgment . . . comes into existence' after the initiation of 'the case as to which preclusion is sought.'") (citation omitted).

failing to depose the doctors with sufficient time prior to trial, and allowing Simmons's counsel to use the doctors' depositions in lieu of live testimony, is not protected by judgmental immunity. (Docket Entry 66 at 6-12.)[4]

In North Carolina, a legal malpractice case predicated upon a theory of an attorney's negligence, the plaintiff has the burden of proving by the greater weight of the evidence that: (1) the attorney breached the duties owed to his client, as set forth by *Hodges v. Carter*, 239 N.C. 517, 519-20, 80 S.E.2d 144, 145-46 (1954), and that this negligence (2) proximately caused (3) damage to the plaintiff. *Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 366 (1985). Further, in analyzing the first prong of a legal malpractice action North Carolina courts have stated as follows:

> Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action [o]n behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.
> An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment . . . .
>
> Conversely, he is answerable in damages for any loss to his client which proximately results . . . from the failure to exercise in good faith his best judgment in attending to the litigation committed to his care.

---

[4]Plaintiff also argued that Defendant Grossman failed to depose Simmons on his "new version of events in the 2017 complaint" (Docket Entry 66 at 9), however, the Court has already concluded that Plaintiff's issue of Defendants improperly stipulating to not using the prior complaints without Plaintiff's consent is collaterally estopped from being asserted in this action. While Plaintiff attempts to restate the issue differently, it is essentially the same issue as it relates to the prior complaints alleging different facts and Defendants failure to inquire about that; as such, it is precluded.

*Hodges*, 239 N.C. at 519-20, 80 S.E.2d at 145-46; *see also Quality Inns Int'l Inc. v. Booth, Fish, Simpson, Harrison & Hall*, 58 N.C. App. 1, 11-14, 292 S.E.2d 755, 761-63 (1982) (stating that the test of lawyer liability was set out in *Hodges* and reiterating that an attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment). Additionally, the third prong of *Hodges* requires an attorney to represent the client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. *Rorrer*, 313 N.C. at 356, 329 S.E.2d at 366. "The standard is that of members of the profession in the same or similar locality under similar circumstances." *Id.*

Furthermore, "[t]he mere fact that one attorney-witness testifies that he would have acted contrarily to or differently from the action taken by defendant is not sufficient to establish a prima facie case of defendant's negligence." *Id.* at 357, 329 S.E.2d at 367. "The law is not an exact science but is, rather, a profession which involves the exercise of individual judgment. Differences in opinion are consistent with the exercise of due care." *Id.* Also, "[g]ood faith is an objective, not subjective standard." *Id.* at 358, 29 S.E.2d at 368. "Absent any evidence of a standard of care with which [Defendant] failed to comply and absent a showing that [Defendant] failed to exercise his best, informed judgment, he is immune from any allegedly erroneous judgmental decisions made during the preparation and trial of [Plaintiff's] lawsuit." *Id.* Therefore, "[w]hen pursuing an action for legal malpractice, 'plaintiffs are required to show that defendants . . . failed to live up to the standard of care of members of the legal profession in their legal community or in a similar locality under similar

18

circumstances." *Miller v. Orcutt*, No. COA11-1128, 2012 WL 1995192, at *4 (N.C. App. June 5, 2012) (unpublished); *Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis*, 86 N.C. App. 51, 56, 356 S.E.2d 372, 375 (1987) (noting that although *Rorrer* does not mandate introducing expert testimony in a legal malpractice action, it does stress the need to establish the standard of care in the same or similar legal community). However, where the parties offer "two wholly different standards of care through their expert witnesses . . . . there [is] a genuine issue of material fact as to the standard of care applicable . . . which the trial court [is] not authorized to decide." *State Emps. Credit Union v. Hendryx*, No. COA09-17, 2009 WL 4912727, at *5 (N.C. App. Dec. 22, 2009) (unpublished).

Here, the parties each submitted expert reports and depositions regarding the standard of care applicable to attorneys in North Carolina, and whether Defendant Grossman breached that standard of care. (*See* Docket Entries 60-11, 60-12, 60-13, 60-14, 64-5, 66-1.) Defendant Grossman submitted a short excerpt of their expert report from Thomas Sallenger, who has been a practicing attorney in North Carolina for more than 35 years and has extensive experience preparing for and trying cases before juries, including in cases involving claims of assault and issues of self defense. (Docket Entry 60-14 at 1.) Sallenger stated in pertinent part as follows:

> At the time of trial in this matter, Grossman had more than forty years experience in the practice of Law, Procedures and Trial Practice. The discovery conducted by Grossman was thorough, complete and well considered. Any attorney acting in the best interest of their client would ensure that they had taken all steps necessary to be apprised of all of the factual basis supporting any claims raised against their client. [Sallenger] did not review any evidence indicating Grossman failed to exercise that professional judgment in good faith. . . .

19

A review of the transcript from the trial proceedings in this matter clearly reveals that Grossman was very prepared for this trial from jury selection until the final result of the case as decided by the jury. . . .

The strategy on the part of [Defendant Grossman] was well considered, often times done, and strategically considered.

(Docket Entry 60-14 at 2-3.) Plaintiff submitted an expert report by John Buric, who according to his deposition had "tried 88 cases to a verdict." (Docket Entries 64-5, 66-1 at 2.) Buric stated in his report in pertinent part as follows:

The standard of care that Defendants owed to [Plaintiff] was that of ordinary skill and capacity commonly possessed and exercised by a North Carolina attorney with at least thirty-five years' experience as a practicing North Carolina attorney. . . .

Since Grossman's judgeship was to begin January 1, 2019, Defendants all of a sudden decided that bifurcating the trial was no longer feasible. The sole reason for this change was due to Grossman trying to wrap up his caseload before the new year. Again, Defendants put their own interest ahead of their client's interest. After Grossman changed his position, it does not appear Grossman explained the significant potential ramifications of this decision to his client.

Defendants failed to properly conduct discovery. . . . By conducting the depositions so late in the process, Defendants did not allow themselves a proper time frame to digest, incorporate, or rebut Simmons' expert testimony. . . .

Defendants breached their duty of care owed to [Plaintiff] in the 2017 case in a multitude of ways . . . .

Defendants, who had thirty-five years' experience, failed to adhere to basic trial practices and procedures . . . . Defendants failed to investigate Simmons' claims as to why he exited his vehicle and his intent upon exiting. Had they performed minimal research, Defendants would have known the ins-and-outs of Simmons' truck and trailer and attacked his credibility by showing major inconsistencies in his testimony. . . .

Based on the foregoing, Defendants violated their standard of care by placing their interest, and the interest of others, above the interest of their client, thus creating a conflict.

(*See* Docket Entry 64-5.)

20

Weighing the evidence and making credibility determinations is a jury function, and a "judge's role on a motion for summary judgment, by contrast, is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue of material fact for a jury to resolve at trial." *Sines v. Kessler*, 558 F.Supp.3d 250, 255 (W.D. Va. 2021). Here, the Court concludes that there is a genuine issue of material fact as to the standard of care applicable in this case and whether Defendant Grossman breached that standard regarding the preparation for and decision not to bifurcate punitive damages, obtaining Plaintiff's informed consent regarding not bifurcating damages, and not conducting additional "substantive" discovery in the 2017 case. Specifically, the parties offered two differing expert opinions of the standard of care applicable to Defendant Grossman's representation and whether Defendant Grossman breached that standard of care. *See State Emps. Credit Union*, 2009 WL 4912727, at *5 (concluding that there was a genuine issue of material fact as to the standard of care applicable which the trial court was not authorized to decide, as the parties offered two wholly different standards of care through their expert witnesses). Therefore, Defendants' motion for summary judgment will be denied as to legal malpractice to the extent it is based on Defendant Grossman's preparation for and decision not to bifurcate punitive damages and not conducting more discovery in the 2017 case. Additionally, given that the Court finds there is a genuine issue of material fact as to the applicable standard of care and whether Defendant Grossman breached that standard of care, the Court need not address proximate cause, as that is predicated upon first finding that

Defendant Grossman breached the duty owed to Plaintiff. *Rorrer*, 313 N.C. at 355, 329 S.E.2d at 366.[5]

### iii. **Punitive Damages**

Defendants argue that North Carolina courts have not addressed whether a client assessed with punitive damages can later recover those damages from his attorney in a malpractice action and that Plaintiff lacks any evidence supporting an assessment of punitive damages against Defendant Grossman. (*See* Docket Entry 61 at 24-29.) However, Plaintiff concedes that he is not seeking punitive damages under the theory of legal malpractice, rather his claim for punitive damages is for Defendant Grossman's fraud in entering into the 2017 Consent Order. (Docket Entry 66 at 11.)

Plaintiff's fraud claim is based upon the 2017 Consent Order that Plaintiff alleges Defendant Grossman intentionally entered without his consent. (*See generally* Am. Compl.) However, as stated above the Court has determined that the issue regarding Defendant Grossman's authority to enter into the 2017 Consent Order is issue precluded as North Carolina courts have concluded that Plaintiff failed to meet his burden to rebut the presumption that Defendant Grossman had the authority to consent on Plaintiff's behalf to that dismissal order. Thus, given that Plaintiff is precluded from asserting that Defendant

---

[5]Due to the Court finding a genuine issue of material fact as to whether Defendant Grossman breached his duty of care to Plaintiff, the respondeat superior claim against Defendant Black & Boone, P.A. proceeds as it relates to the legal malpractice claim only. *See Buchanan v. Fairfield Resorts, Inc.*, No. 1:04CV725, 2005 WL 3157580, at *3 (M.D.N.C. Nov. 25, 2005) (unpublished) ("Respondeat superior is not an independent cause of action. It is a doctrine that makes 'a master . . . liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent.'"); *see also BDM Inv. v. Lenhil, Inc.*, 264 N.C. App. 282, 304, 826 S.E.2d 746, 764 (2019) ("Generally, 'a principal will be liable for its agent's wrongful acts under the doctrine of respondeat superior when the agent's act (1) is expressly authorized by the principal; (2) is committed within the scope of the agent's employment and in furtherance of the principal's business; or (3) is ratified by the principal.'").

Grossman entered into the 2017 Consent Order of Dismissal without his authority or consent, his fraud claim necessarily fails as a matter of law, as that is an indispensable issue pertaining to his fraud claim, and as such he is not entitled to punitive damages. *See Harmon*, 2012 WL 2308313, at *3 (affirming trial court's dismissal of the action because an indispensable issue of plaintiff's claim was raised and resolved in prior decision).

### D. Plaintiff's Motion for Summary Judgment or *in the alternative* for Partial Summary Judgment

First, the Court notes that Plaintiff moves for Summary Judgment as "to the allegations and defenses stated in Defendants' Answer and Answer to Amended Complaint" (Docket Entry 64); however, based on Plaintiff's arguments, the Court construes Plaintiff as moving for summary judgment on all claims against Defendants as alleged in his Amended Complaint, (Docket Entry 65). Plaintiff argues that (1) Defendant Grossman committed fraud by intentionally entering into the 2017 Consent Order without his consent; and (2) Defendant Grossman's representation of Plaintiff in the 2015 and 2017 state cases violated the standard of care and was malpractice. (*See generally id.*) Defendants argue, *inter alia*, that Plaintiff falls short of meeting his burden on any claim, as he offers nothing more than his own conclusions that the elements of his claims are met, and that Plaintiff's brief demonstrates his summary judgment motion, at best, hinges upon multiple disputed issues of fact, and should be denied. (*See* Docket Entry 68.) The Court will now view the facts in the light most favorable to the nonmoving party.

### i. Fraud

For the reasons previously discussed, Plaintiff's fraud claim fails as a matter of law, as he is issue precluded from asserting that Defendant Grossman improperly entered into the 2017

Consent Order, which is an indispensable issue pertaining to his fraud claim (*see generally* Am. Compl). *See Harmon*, 2012 WL 2308313, at *3.

## ii. Legal Malpractice

Plaintiff argues that Defendant Grossman violated the standard of care during his representation of Plaintiff in the 2015 and 2017 cases against Simmons in North Carolina state court. (Docket Entry 65.) As to Defendant Grossman's representation of Plaintiff in 2015, Plaintiff contends that Defendant Grossman breached his duty of care by entering into the 2017 Consent Order without his consent. (*Id.* at 14-16.) However, as previously addressed herein this issue is precluded, and thus, Plaintiff cannot establish Defendant Grossman entering into the 2017 Consent Order is a basis for malpractice.

Plaintiff further asserts that Defendant Grossman breached his duty of care to Plaintiff regarding the 2015 case by failing to conduct discovery, being unaware of the pending claims, and not seeking costs after Simmons filed his second complaint. (*Id.* at 15-16.) Additionally, Plaintiff contends that Defendant Grossman breached the duty of care regarding the 2017 case that ultimately resulted in a jury verdict against Plaintiff by failing to determine Plaintiff's collectable assets, stipulating to the parties not bringing into evidence that Plaintiff was not prosecuted for shooting Simmons, and failing to question Detective Arthur regarding Simmons's statements that showed "material factual inaccuracies." (*Id.* at 17-22.) As previously stated, the parties submitted expert reports and depositions regarding the standard of care applicable to attorneys in North Carolina, which the Court determined that the applicable standard of care and whether Defendant Grossman breached that standard of care

24

are jury issues, thus Plaintiff's summary judgment motion is denied as to whether these failures by Defendant Grossman were malpractice.[6]

Plaintiff also argues that Defendant Grossman breached the standard of care by consenting to a pretrial order that was "extremely prejudicial" to Plaintiff and by failing to conduct proper discovery in 2017. (Docket Entry 65 at 17-20.) However, to the extent that Plaintiff argues the stipulation regarding the 2012 and 2015 complaints being inadmissible constituted a breach by Defendant Grossman, as previously stated herein that issue is precluded. Further, Plaintiff's argument that Defendant Grossman breached the standard of care in 2017 by not bifurcating the trial and failing to conduct proper discovery has been previously addressed herein and for the reasons articulated above, the Court finds there is an issue of material fact, and as such Plaintiff's motion is denied as to these issues.

Additionally, Plaintiff argues that Defendant Grossman's "violations" of the duty he owed Plaintiff directly and proximately caused Plaintiff's injuries in 2015 and 2017. (*Id.* at 21-22.) However, given that the Court concludes there is a genuine issue of material fact regarding the applicable standard of care and whether Defendant Grossman breached that standard, the Court will not address proximate cause as discussed above.

---

[6]Due to the Court concluding that there is a genuine issue of material fact regarding Plaintiff's malpractice claim, Plaintiff's respondeat superior claim also remains. *See Buchanan*, 2005 WL 3157580, at *3 ("Respondeat superior is not an independent cause of action. It is a doctrine that makes 'a master . . . liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent.'"); *see also BDM Inv.*, 264 N.C. App. at 304, 826 S.E.2d at 764 ("Generally, 'a principal will be liable for its agent's wrongful acts under the doctrine of respondeat superior when the agent's act (1) is expressly authorized by the principal; (2) is committed within the scope of the agent's employment and in furtherance of the principal's business; or (3) ratified by the principal.'").

## IV. CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that Plaintiff John Wiles' Amended Motion for Summary Judgment, or *in the alternative*, Partial Summary Judgment (Docket Entry 64) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Black & Boone, P.A. and Steven A. Grossman's Motion for Summary Judgment (Docket Entry 60) is **GRANTED IN PART AND DENIED IN PART**, **GRANTING** the motion to the extent that: (1) Plaintiff's legal malpractice claim is based on Defendant Grossman improperly entering into the 2017 Consent Order and improperly stipulating to not using the 2012 and 2015 complaints without Plaintiff's consent; and (2) dismissing the fraud claim against Defendant Grossman in its entirety (Count II), but otherwise **DENYING** the motion.

**IT IS FURTHER ORDERED** that Plaintiff's Verified Motion to Extend Time to File Plaintiff's Amended Motion for Summary Judgment, Brief in Support of Amended Motion for Summary Judgment, and Response in Opposition to Defendants' Motion for Summary Judgment (Docket Entry 70) is **GRANTED.**

Joe L. Webster
United States Magistrate Judge

March 31, 2023
Durham, North Carolina